Good morning, Your Honors. Good morning. I'm Tyron Cadly on behalf of Mr. Kelley. Before the prosecutor got on the witness stand and told the jury, if I believed Kelley did not do it, we would not be investigating him, and the investigation would not be proceeding. Long after the prosecutor got the trial judge to endorse and then repeatedly remind the jury that if I believe Kelley was not guilty, it's in my power, my obligation to tell her that we would dismiss the case. Long before and after, in between, outside the jury's presence, he admitted to the judge, quote, I agree with you. Some of the things I've said are dead wrong, and I know that. What did he say again? Some of the things I've said are dead wrong. Dead wrong. Not just wrong, dead wrong. Dead wrong. And I know that. Counsel, help me on something. Yes. I've never seen a prosecutor take the stand and continue to prosecute the case. I completely shared your view that it was bizarre. However, I did not see a citation in your brief, and I could not find one myself, where there was a Supreme Court decision that said so. And we have repeatedly been reversed by the Supreme Court for not taking that section of 2254D seriously, where it says we can only grant it 2254 when what the state court did was contrary to or an unreasonable application of a holding. And the Supreme Court has said that doesn't mean dicta of the Supreme Court. So what I was looking for was not a Ninth Circuit decision and not an implication, but a holding of a Supreme Court decision. What Supreme Court decision? Your Honor, 2254D applies only if two things. One, the Federal claim was adjudicated on the merits. And two. No, I don't think that's true anymore. I think the Supreme Court held that it doesn't really matter whether the State Supreme Court of Appeal actually talked about any U.S. Supreme Court authority or Federal authority, just whether the holding is contrary to or an unreasonable application of it. Your Honor, those are two different things. One is whether the State court discussed it. The second is whether it was adjudicated on the merits. And adjudication on the merits is required. Well, if it's not adjudicated on the merits, it's not exhausted. Not necessarily. It could have been overlooked. It could have been ignored. It could be procedurally defaulted, but still subject to the court's review, if not procedurally barred. I think here the State court said it was defaulted, didn't they? They did say it was defaulted. Because there was no objection. I believe there was, in fact, adequate objection and the judge pre-terminated discussion of it. Well, look, you know, the whole setup that we have in our system today is to frustrate the use of the Great Writ, right? That's what it is. So now doesn't the State have this simultaneous objection rule that you've got to get up or contemporaneous objection? It does, but here the prosecutor told the judge that the defense objected. The defense said, all but invited the prosecutor to make a motion to strike the testimony he didn't like, conveying to the judge, and said to the judge, that's not the case. We don't want the prosecutor testifying. And told the judge, can we talk about this after lunch? She said yes. Then she got on the bench. She didn't invite discussion. She ruled. She ruled. She knew that he wasn't, that he objected. And when he raised the issue later, what did she say? This whole issue is preserved for appeal. This was not new. She wasn't blindsided by it. Everyone knew that there was an objection and it was opposed. And that's the purpose of the contemporaneous objection rule. There's another reason why this case falls outside of 2254d, and it's the other fact, and that is that even if the State court adjudicated the Federal claim, all it did was have a throwaway line about abuse of discretion. Its ruling relied on unreasonable findings of fact. The State court ignored very critical facts. It said, the trial judge and the appellate court said, well, the prosecutor could get on the stand because Miller, the detective who was present for all this conversation, had been excused. But in fact, the record shows Miller had not been excused. It said he had been placed on call. The trial judge and the court of appeal justified the prosecutor's testimony because of things that Kelly testified to, but they ignored that this information was elicited by Monaghan himself. He pulled for this information. The information came out from Kelly only because the trial judge cut off cross-examination of Detective Miller and told the defense, elicit this information from Kelly. The defense, another factor totally ignored, was that the defense did not even initiate inquiry into the June 19th and 20th meeting. This was brought up by the prosecutor. And another fact that's really critically important that's overlooked. I'm not sure I followed that. As I recall, there was a discussion, and there was a discussion of the prosecutor's testimony, and the State judge did consider the prosecutor's testimony. The defense lawyer did not object to the prosecutor taking the stand. What he objected to was the prosecutor testifying to hearsay, and the judge admonished the prosecutor not to inject hearsay. So it looks as though the defense lawyer was considering what to object to and what not to. He objected to the hearsay. The judge considered the hearsay and granted the defense objection. The objection about hearsay came only after the judge took the bench right at the lunch recess and announced her ruling, the prosecutor is going to be allowed to take the stand. We don't have another deputy district attorney here to call to answer questions.  Kagan. I didn't see in the record a specific objection to the prosecutor's taking the stand, but we can check the record for that. Can I have you address another issue before your time runs out, which is the motion to remand? Okay. That's a very broad question, Your Honor. What is it that you want us to do with regard to the rest of the issues in this case in remanding the one issue that you raised in your motion? Your Honor, I think the Court can and should actually at this point grant relief rather than remand. But if the Court is not going to grant relief, I do believe that a remand is appropriate. We have really more evidence of a campaign of concealing critical evidence. And here, one of the things, one of the issues that we learned was that, well, we already knew the prosecutor was vouching for Johnson by telling the jury about, assuring the jury about the nature of the plea bargain that he had, and that that would assure his truthful testimony. But more than that, we now learn that the prosecutor concealed that that wasn't even the deal. There really was a deal, and he criticized offensive evidence. But it looks as though it's been years and years and multiple petitions. It's adding a new claim, and why shouldn't he just do it by the usual, file a new petition and see if he can get through the second or successive limitation? That rewards the State for its misconduct. No, a remand would reward Kelly by giving him yet another shot on a previously unexhausted and unraised claim. But he had no idea that that claim even existed. Why should he not take the prosecutor, the representative of the State, represented to the defense counsel, to the jury, to the trial jury? When was the first time that he learned regarding the issue with Johnson? I'm sorry. Go ahead. Are you dropping your voice? I'm trying not to. Go ahead. I like the last thing you say. Say it over. I like people in the audience to find out what's going on in this country. So tell us again. When the defense lawyer tried to tell the jury that former Johnson was probably getting a deal for his testimony, that he was not, as Johnson said, I'm going to spend the rest of my life in prison. And he was in his late 20s at the time. The prosecutor mocked that to the jury. Where's the evidence of a deal? There's no evidence of a deal. He's going to spend the rest of his life in prison. And the parole board is going to know about those 30 other crimes he committed in L.A. County alone, L.A. County alone. The prosecutor, we find out, lied. Lied to the defense lawyer, lied to the jury, lied to the trial judge, that in fact there was a deal. Why is this coming up now after, what was it, a previous multiple proceedings in State court, district court, a past proceeding in the Ninth Circuit, and then a Supreme Court decision, and then back, and I mean, the issue about a deal comes up in a very large proportion of habeas cases. And it's only by happenstance, only by happenstance, that Kelly happened to this to be in the same prison that somebody else was in who had learned about the deal previously. There was no evidence in the record, which is why we need a remand to establish when this information came to light. But it's not Kelly who's being rewarded. He wants out. He's been wanting out for years. If he'd known about it, he would have brought it a long time ago. He brought it immediately, within weeks of finding out. He was in the California Supreme Court, and he was trying to bring it here. It was only because I needed time. I eventually got appointed and needed time to figure out what this case was all about. He filed – Kelly, pro se, filed a motion to dismiss this appeal, you know, wrongly, I believe, because he thought the only way was to avoid the second petition bar, was to dismiss the appeal so it didn't become final, so he could go back. Kagan. Kagan. And so as I understand it, counsel, what happened was Johnson had testified that he was going to serve the rest of his life in prison and then shortly thereafter was actually sentenced to an indeterminate life term and was released after 10 years, right? Correct. And your client found out about this for the first time when? I think about shortly after the district court judgment. So I think it was in about 7 years this has been pending. This case has a long history in this court. But I think it was sometime in 07 or 08, it was before I got appointed, and he was trying to get the as a matter of fact he filed two petitions in this court, which established the timeliness of the case. I would like to sort of return to what was. When were you appointed? I think it was in the beginning of 08. I think it was in the springtime of 2008. And Kelly had already filed his habeas petition, a habeas petition he sent to this court. We have the mailing log confirming that he sent it to this court. And we have the mailing log confirming that he sent a follow-up letter about 2 or 3 months later, and it was a few months after that, that the certificate of appealability no, I think certificate of appealability had been granted, that I ended up getting appointed. And early on, the question is what to do with all these problems and all these procedural issues in the case. But I had to – it was a 20,000-page record. I needed time to get through it. And we tried to get the district judge interested in it, but we were on appeal. And so that's why I guess it was referred to the merits panel. Has the issue about this supposed deal been exhausted in State court? Yes, Your Honor, it has been. Absolutely. Another, with regard to the advocate-witness issue, I would just also add that the State court misunderstood one of the most critical facts about the prosecutor's testimony, was that the prosecutor asked to testify only about the June 19th and 20th meeting. The trial judge invited him to testify about a much broader range of factual issues, so not just limiting himself to what happened, even though, of course, Miller could have just testified to that. And so these sorts of facts, sort of the – neither the trial judge – the first things that the trial judge didn't consider and that the district – the court of appeal didn't consider, these are facts that are material to whether the trial judge exercised reasonable discretion. And I would say that when they fail to consider material facts, that's an abuse of discretion as a matter of law, or at least an explanation of how it is, and the courts ignored those facts. And the only thing they said about this was, well, it could have been a reasonable – just an abuse – not an abuse of discretion. I must have missed something there. We can't grant a Federal habeas writ because of a State court's abuse of discretion. That's correct. But when they get the – when the material facts are wrong, the court has plenary review. And the prosecutor used this opportunity to testify to blurt out things like he personally believed that Kelly was armed and a threat to his personal safety. He blurted out that the chief of police supposedly made a personal finding that Kelly was completely incredible. These are things about not just vouching and confrontation clause violations – I'm sorry – but also, also vouching, not just confrontation clause violations, but also vouching. That's clearly prohibited. That has been prohibited since Berger and Young. And saying things, I wouldn't have charged him if I didn't think he was guilty.  I appreciate that, and I certainly feel like the system is designed to encourage or to avoid any type of scrutiny, but the Federal court, the Supreme Court has confirmed that 2254d-2, that when the Supreme Court, when the Supreme Court, when the Supreme  Court, when the State court's ruling relies on an unreasonable determination of fact. It's not what it's – I think it said a fact where there's no support for it in the record, didn't it? I can't remember the precise words right now. No, it's an unreasonable – just an unreasonable. Unreasonable determination of fact. And these are unreasonable determinations of fact that just sort of gloss over. What was the determination of fact now by the court that was unreasonable? Well, that Miller had been excused and therefore the only person left to testify was Monahan. The fact that, you know, by ignoring, that it was Monahan that kept pulling, pulling for this information. He asked, you know, he's the one who was asking, you know, are you inferring someone set you up? Are you telling me, are you trying to tell me that someone did something wrong? And were you framed? And Kelly, Kelly tried to avoid impugning the prosecutor directly. He said, are you saying that I set you up? I just said someone did something wrong. I don't know how it happened. Are you framed? Explain framed to me. I mean, that's just a typical avoidance. He's not trying to fight with the prosecutor. He's not trying to get the prosecutor on the stand. The prosecutor, asking these questions, he's begging to be able to get something done so he can hop up on that witness stand and say, I'm a prosecutor and I wouldn't be prosecuting him. That makes it look like the whole thing was tactical. It does look that way. I mean, tactical by the defense, the, the, the, and that that explains why defense counsel did not object. Well, you had a judge here that just sat there and, and, and let all of these things happen in that courtroom without stopping. I mean, I, I, I don't ever remember a prosecutor getting up on the stand and vouching for the veracity of a, of an informant. I never heard of that. And I never heard of a judge allowing something like that to happen. And it's just, it went well beyond that, well beyond that, and, and, and not only vouching for the informant's integrity and honesty, but also telling the jury that he wouldn't be there and he wouldn't prosecute this case if he weren't convinced that the person was guilty and the whole thing's an outrage. But as Judge Kleinfeld points out, that's what our Supreme Court wants us to do, but I don't know that I'm going to do it, but it's, I mean, that's the state of affairs in this country today as far as respecting defendants' constitutional rights. There's no question that the State courts have a degree of insulation, but in fact, when they, 2254d2 does say, if they make an unreasonable determination of fact, this Court, this Court's review is plenary, and the Supreme Court has endorsed that, and this Court has recognized that that's acceptable. And I, where did this happen again? Los Angeles County. Los Angeles, yeah. Yes. Another problem with Los Angeles is that in the federal system, you have a criminal case, it stays with that district judge. Goes up on appeal, it comes back to that judge, as long as that judge is on the bench in that court, and that can be for years and years. But in the state court system, and I spent some time there, the case doesn't follow the judge, the case stays in that department. So, the judge that presides over the trial can make a lot of mistakes, but the one who paid the price, not only will be the defendant, but the judge that sits in that department, three, four, five, six years from now. So there's, the whole setup is one not designed for a judge to be careful and worry about whether someone is getting a fair trial. Just to respond to... You understand what I'm saying? I absolutely understand, Your Honor. Okay. Yes. To respond to one of John Kleinsfeld's concerns, a lot of what the prosecutor was trying to elicit from Kelly himself was objected to. So, I don't see anything in the record, and nobody has suggested before Your In fact, the defense lawyer said... It just dawned on me right now, frankly. I was thinking, why would Kelly be so evasive, and why would his lawyer not object to this bizarre proceeding? And it just dawned on me when you were describing this odd set of questions, maybe this prosecutor not only does bizarre things, but looks bizarre. And the more he's in front of the jury, the more they'll hate him. Let's get this guy on the stand. Your Honor, what did the defense lawyer said? Your Honor, we don't want the trial, the prosecutor up on the witness stand. It will hurt the defense. He said that. And the prosecutor, that's what the prosecutor said as well. There was sufficient reason, the judge knew what was going on. But he carefully did not say, I object to the prosecutor taking the stand. And Your Honor, the reason why he didn't, is because he didn't even know the law. That the prosecutor could not serve. You haven't seen it in your lifetime. I haven't seen it in my lifetime either. I haven't been practicing as long as you've been, but I've been around for a while. And I've never seen this either. There's a couple of cases out there. There's one from the 11th Circuit, the Walker case that I cite in my briefs, which was an ineffective assistance of counsel claim, where the prosecutor got up on the witness stand. And they found it patently obvious that it was grossly deficient to fail to object to this. And in fact, what happened is the following day, which is in the record, it's one of our IAC claims that the district court- No, it's ineffective. I mean, when I looked at this, the prosecutor looked like a maniac. And if he looked to the jury like a maniac, that'd be great for Kelly. Well, that's up in Alaska, you know. It's cold and dark. Your Honor, we have- If you found a case, I mean, it seemed to me if the prosecutor's going to get up and testify, then he needs to get off that case. He should. At a minimum. He should. And he was- And another one ought to take over. Yeah. And in connection with the motion to recuse the prosecutor, after he testified,  was based on spite or ill will, as if that was at all relevant. It wasn't about his motivations. It was about the source of where this information was coming from. But the Attorney General makes an important- And he proved the spite and ill will by getting the guy, by letting the guy get up there. I mean, the case should have been about all these horrible things that Kelly and his friends did. The torture and the, I think there was a rape in there and just monstrous things. And instead of it being about Kelly and his friends doing these horrible things, it winds up about the prosecutor being weird. Beyond weird. But actually, this case was not about what happened. In this case, it was about whether Kelly was even involved. Yes, Mike DiVicino, Edward Johnson, the pornographer with the robbery kit and the Garrett and the firearms, they were involved. This case, there were only three types of witnesses in this case, other than the rewarded informers. Witnesses who said, I didn't see Kelly. I can't identify either because I didn't see him or I wasn't able to see anyone. Witnesses like Beverly West- But he didn't see him because he was blindfolded when these people were torturing everybody. But there were the other people who weren't and who said- Look, you know, they're bad guys. They're bad guys. But under our system, they're entitled to a fair trial. That's what it all comes down to. Yeah. You know, they're no good, but you got to give them a fair trial. And I've never seen one like this. And the judge sitting there doing nothing, defense counsel, how long had he been around? He'd been around for quite a while. And yet still, I was going to say the – I'm sorry, I had it right here – that the attorney general has explained, has conceded that – where is it? I'm sorry. That defense counsel did not object, quote, because counsel was unaware of any basis for doing so. And that's their quote at page 29 of the appellee's brief. And that's supported by ER 1425 and 26. How would they know? I never told the prosecutor what I was thinking. But I defended. Because he made a motion. After the prosecutor testified, he says, well, don't let him argue the case. He's now – because not only has he said he testified, but the whole point of his testimony was to call the defendant a liar about everything. We're going through a lot. You know, we're way over your time. Right, right, right. So we'll give you a little bit for rebuttal. Okay. And we'll hear what the attorney general has to say about this. I would just say, he mentioned it during his motion after the fact. He said, I didn't learn about it until over the weekend when I was talking to other people. Thank you. Good morning, Your Honors. Supervising Deputy Attorney General Registrant Tran, on behalf of the Respondent. May it please the Court. Given the limited time that I have, I just want to briefly address a couple of the issues brought up by counsel. First, as to the prosecutor testifying, as this Court's comments have indicated, the – You're going to have to talk a little slower and louder for me. I apologize, Your Honor. No, you don't have to apologize. Just speak up clearly. Given what this Court has commented with respect to that issue about the prosecutor testifying, habeas relief in this case cannot be granted due to the lack of Supreme Court precedent and also because the claim is procedurally defaulted. And as for the remand motion, That's procedurally defaulted because there was not this contemporary objection. Exactly, as this Court has stated. Yes, that is correct. There were actually numerous instances of alleged prosecutorial misconduct that were not procedurally defaulted because there were objections, and then we get to harmless error review, correct? Yes. Now, counsel argues that with regard to the claims that were not procedurally defaulted, the lower court made an unreasonable determination of the facts. How do you respond to that? And the issue I'm thinking of specifically is that if you break apart the instances of prosecutorial misconduct, they may not seem as significant, but you've got to view it in context and totality. And you've got a prosecutor who has been discussed by my colleagues as well as defense counsel, acted in an incredibly unusual way in essentially turning himself into a witness, repeatedly injecting his own personal opinion as to the defendant's guilt. And so my concern is that the instances of prosecutorial misconduct that were addressed on the merits by the lower court were addressed in isolation when you've got actually this whole context, because the jury didn't parse it bit by bit. They're sitting there looking at the prosecutor's testimony and evaluating in totality. So doesn't one instance spill over to the other instances as well? The procedurally defaulted instances of prosecutorial misconduct, why doesn't that spill over to the ones that were rejected on the merits by the lower court? It doesn't spill over because these specific instances of the prosecutor's alleged misconduct, although they constituted improper comment at some points, they did not amount to misconduct under Supreme Court precedent. As recently as 2012, I believe, the U.S. Supreme Court held in Parker v. Matthews, citing many instances of even worse comments by prosecutors, such as, I want to blow the defendant's head off. Comments like that certainly are improper, and we don't dispute that. But improper comments do not constitute misconduct, short of a due process violation. And to address Your Honor's concern that the cumulative effect of these comments might have violated petitioner's rights, well, first of all, the cumulative error argument has not been preserved for this Court. It's not even a certified issue. Are you telling me that the Attorney General is satisfied and sanctions everything that was done here? Absolutely not, Your Honor. Okay. So this was not a fair trial. You know, we have, you know, the government's supposed to maintain a high standard, and we don't go out there and commit error and inject all kinds of personal reasons by the prosecutors to why someone's guilty. And prosecutors taking the stand. Have you ever heard of that going on before? I have not heard of that, Your Honor. It's never happened before as far as I know, and I've been around a long time. And I think the conduct here was pretty outrageous. And, you know, the Attorney General has heard from our Court quite often on matters such as this. Right? Yes. Yeah, okay. So when are they going to square this ship away and get things to be the way they ought to be? You know, you have a case here that gets mucked up. That's why it takes years and years and years and years. Now, how many years has it been? It's been pending in federal court for 17 years, due to large – Well, a lot of it was litigation by petitioner. Yeah, that's – why was the petitioner litigating? Because the prosecutor gave them all of these – all this ammunition to keep going. If the prosecutor had done the job correctly and fairly and the judge had been awake to this abuse of power, we wouldn't be here. We wouldn't be here. Your Honor, we have to keep in mind that the person that caused all of this to happen was petitioner. He was warned repeatedly by the trial judge not to bring up this subject matter at trial. He did it not only once but twice and refused. Yeah, but if you have a judge that's competent and knows what they're doing, they know how to handle problems like that, not the way this was done. And I think that's a lame excuse. Well, the trial court tried its best to control petitioner, but he wouldn't listen. Well, there are ways of controlling petitioners and prisoners who won't listen and won't behave themselves, if that's what you're saying. You know, and not let a prosecutor run amok. The prosecutor was allowed to respond to petitioner's accusations. That's what happened here. It is true that other conduct by the prosecutor, such as improper comments, should not have been made. Absolutely. Yes. You agree to that, right? Absolutely. Why don't you say that? You agree with that. There was a lot of impropriety that went on here. Sure. By the prosecutor. Sure. And prosecutors should set the standard, huh? Absolutely. In integrity. Absolutely. And in trial practice. We don't dispute that at all. Their job is not to convict, it's to see that justice is done. That is correct. Is that right? That is correct. Okay. All right. We agree on that. All right. We do. We don't have any problems. It was just you and me running things, see? The prosecutorial misconduct issue with regard to Johnson's resentencing, that's been exhausted in state court, right? This is in connection with the motion to remand, the resentencing of Johnson. My understanding is it's not been exhausted in state court. Petitioner wants to remand this case to develop in the district court. And I believe that he will seek to develop this, that issue in the state courts as well. But we don't need to do that because the motion for remand involves allegations that arose in 2003. But he didn't find out about until 2006 when he was transferred to the same prison as a co-defendant. Well, co-defendant Mario Zapata, this court found in Zapata's federal appeal that he could have discovered these allegations in 2003. And this court denied relief on that basis. So if he truly had been in contact with co-defendant Zapata, petitioner would have found out about this in 2003. He could have found out about it as this court had concluded in Zapata's case. But I want to clarify some statements that counsel made with regard to Johnson's testimony. First of all, Johnson did not testify that he would certainly be in prison for life. He said at trial that he could be released, be paroled as early as 12 years. And the records submitted by petitioner seem to indicate that, that he was indeed paroled after 12 years. Was he paroled or was he actually resentenced? I believe... Are you saying that he just got paroled in the natural course of things, paroled on the original sentence? No. I'm saying he ultimately got released after serving about 12 years. Right. But the allegation is that he was resentenced because there must have been some deal struck. Right? And that's what he wants to explore. So was he resentenced pursuant to some deal that you're aware of? No. I'm not aware of that. These are just allegations. And I don't have any evidence that this person, that petitioner is claiming to be Sean Meyer, is indeed Johnson. But assuming he is, ultimately what Johnson did testify to is accurate, which is that he could be paroled as early as 12 years. It turned out to be accurate. We know that the... Well, I don't know how the system works now, but the parole board, they make the final determination. Right? Yes. Okay. So... That's what happened here. So what's the point in arguing that he could be released after so many years? And who appoints the parole board? The point I'm trying to make is that... Who appoints the parole board? The governor. The governor does. Right. Okay. But the point I'm making, Your Honor, is that Johnson did not lie at trial. This is what it all comes down to. Did Johnson lie at trial? And the answer is no. The final comment I have with respect to the remand motion is petitioner in his own motion concedes that these allegations do not establish petitioner's innocence. And so to remand on this issue after 17 years of litigation in federal court, nearly for about two decades after the state court conviction became final, would defeat the purpose of the ADAPA of expediting federal habeas cases and ensuring finality of criminal convictions. Let me ask you this. You have to look hard and long to find a federal case that's been tried by a federal judge that comes up on 22, whatever it is, 55. But all of our time is spent, and one of the reasons we now have maybe 30 magistrate judges is to take care of the work that the state system has created for us because of the way the trials are held there. You understand what I'm saying? Yes. Because there's no fixed responsibility in the state court system as there is in the federal system. You know, I was a trial judge in both the state court, muni court, superior court, United States district court. I never had those things come back to me. You can look at the reported cases in the federal reporter. And when I was on the state court, I used to handle about 120 felonies every month. That's a lot at the end of a year. So the system is broken. And that's why we've got this burden of all these state habeas petitions that are brought to our court. And, you know, I've been talking this way for a long time, but nobody pays any attention but a few people. I wish the state court, when John Van de Kamp was attorney general, we didn't have that problem because he understood how the systems worked. Well, Your Honor, I think the Congress has tried to remedy this problem by passing the ADPA. And under that statute, relief cannot be granted in this case. Sure, we have the ADEPA. Another roadblock is saying to it, people get a fair trial. It's not hard to give people a fair trial. And if you give them a fair trial, the trial goes quickly. Okay. You've been taking notes of what I'm saying. Thank you very much. Thank you. With regard to Judge Nguyen's question about exhaustion, if you look at excerpts 1697 to 1707, 1751 to 56, Kelly filed a habeas petition directly with the California Supreme Court in 2007. What Zapata learned and when Zapata learned, that is totally different from when Kelly learned what he could have learned. There's no evidence that Kelly learned anything any earlier. Could you respond to the argument your friend made that the co-defendant testified not that he would be in jail for life, but that he could get out in 12 years? He said that was a theoretical possibility, but he also made very clear that because of the 30 or so other robberies and kidnappings that he had done in L.A. County, which he said the parole board would know about because he said the prosecutor said he would tell the parole board about them, that he would probably do the rest of his life in jail, probably the rest of his life in jail. And that's what the prosecutor repeated. If I'd been on the parole board, he would. I mean, it seems like a fair judgment about probability. What's the matter with that? But the prosecutor hid the fact that Johnson had any prior criminal history at all. So he showed up at the parole board having a much-reduced sentence, a simple life sentence, just a 7-year minimum, and with no criminal history, and simply a single incident. And so he misreported. So you're saying that there wasn't any lie during Kelly's trial. What there was was the prosecutor went easy on the co-defendant at the co-defendant's parole hearing 12 years later. Well, actually, the prosecutor lied about that. He said, I'm going to make sure they know about this. I'm going to write a letter and tell them. Again, facts outside of evidence, part of his typical campaign of misconduct. But he assured the jurors that the parole board would not invite, would not allow Johnson to be released. He would do everything in his power to fight that. As to the doubt, the hypothetical doubt that we're talking about. I don't know if that's a lie. I mean, a lot of people commit to writing a letter, and then they don't get around to it. But the 10-year determinate sentence went away? Yes, it did. Yes, it did. So that was the issue. He was expected to serve a 10-year determinate sentence. Right. Followed by an indeterminate life term with 7 years being the minimum. Absolutely. Then he was resentenced to just the indeterminate life term with 7 years minimum. Very, very accurate. And just to allay any doubts about different people, my remand motion sort of goes through the first remand motion from I think it's 2010, goes through the detailed facts about comparing the two cases. But the highlights, the same number of crimes were charged, the same dates of the involved. These are the same case. And the attorney who originally responded to the remand motion all but agreed that I'm, if the court wants me to use the man's name, but Sean M. was the same person as Edward Johnson. So, yes, as far as the extent of the misconduct, Judge Nguyen, again, very perceptively noted the State court used the wrong legal standard by isolating and picking apart all these individual things and not looking at the entire picture of what happened at the trial. And some of this misconduct involved directly implicating the defendant's constitutional rights. Vouching and denigrating the defense lawyer, that directly goes to the Sixth Amendment right to counsel. And he said that it was counsel's job to mislead the jurors. And he put himself, of course, on a completely different plane, where it was his job simply to preside and to dismiss the case if he felt that there were any doubts. He tried to align himself with the jurors. These directly implicate constitutional rights, which Darden and Donnelly both say stand on different footing in the misconduct analysis. And the State court, because it applied the wrong standard, this Court can approach it de novo. As for the totality of what happened at this trial, I have never in my history as an appellate lawyer, over 20 years, compiled an appendix that's a compendium of what happened at trial. Just because we had eight volumes of excerpts, nearly 2,000 pages. Just to excerpt what the prosecutor did and said that was improper and inappropriate, the supplement has a fair number of pages of repeated objections and admonishments a trial prosecutor completely ignored and said he was going to ignore. It said, we all do what we have to do. But removing the objections and some of the other stuff for context, we still have 150 pages. This was a long trial. Granted, but 150 pages, these are not single isolated incidents. They are not discrete incidents. It's pervasive. And one fact, although we have spoken a lot about the prosecutor testifying, which is truly a shocking claim, and the rampant and pervasive misconduct, I really don't want the Court to lose sight of an improper instruction that ended up striking unspecified aspects of Kelly's testimony. It invited the jurors to decide what they might, should or would disregard. Because of the prosecutor's pervasive misconduct, because that was so excessive, this instructional issue wound up very far at the back of the brief. And I don't want the Court to misconstrue that as reflecting its relative significance, because it really is quite important in that even the Attorney General misinterpreted what that instruction was, suggesting that the trial judge was targeting instances of Kelly's nonresponsiveness, when in fact it was in fact the only instances that the Attorney General cites as appropriate justification for that instruction were instances where the prosecutor himself was admonished by the trial judge. All right. You had a good workout today. Thank you very much, Your Honor. All right. Thank you very much.
judges: Pregerson, Kleinfeld, Nguyen